All right, we're going to hear Mingo Logan Coal Company v. Owens and Mr. Mattingly when you're ready. May it please the court, I'm William Mattingly here on behalf of the coal mine operator Mingo Logan Coal Company. The two cases you're going to hear today are both black lung cases as you've already acknowledged. They deal with 124 word addition to the ACA section 1556 and how it reapplies certain provisions of the Black Lung Benefits Act. This case deals with the reapplication of 30 USC 921 c4 as it applies to miners claims. The parties agree on certain things and it's always easier to to get that out. The parties agree Mr. Owens was a longtime coal miner. He almost worked for 30 years. The parties agree that he's totally disabled. Why does that matter? That matters because of the change in the Black Lung Benefits Act. He is entitled to a 15-year presumption of disability due to pneumoconiosis because he was a longtime coal miner and he has a disabling pulmonary disease. That means Mingo Logan, my client, has to rebut that presumption. So once the administrative law judge found correctly that the presumption was invoked, the administrative law judge concluded that Mingo Logan had to rule out coal mine employment as the cause of the two provisions. It says the secretary may rebut the presumption of total disability due to pneumoconiosis by showing there's no pneumoconiosis or that the pulmonary impairment did not arise out of or in connection with employment in a coal mine. That second provision, the disability rebuttal provisions, the focus of the argument here this morning. And the real question is must a coal mine operator rule out any possible connection between coal mine employment and disability or can the operator show impairment from pneumoconiosis but still show something else was the cause of the disability? That is to say, can an operator show pneumoconiosis is mild and some other disease explains the disabling pulmonary disease and still rebut? Now section 921C has four subsections or it has five subsections. You say the two provisions attributed to the secretary doesn't cover the full logical possibilities. That there's a third logical possibility which is the causation between pneumoconiosis and the disability. That is correct. And in showing that connection you suggest that you would be able to show focus on the substantiality of the causation. Yes. If it's mild it's not substantial, at least try. That's a pretty narrow gate but logically you're saying it exists. It is. So therefore it's meaningful that the word secretary was used and limited by usury and so that you should be able to, under that provision, you should be able to try to prove this third logical possibility. That is just your argument. That's the gist of the argument. That 921C has five subdivisions. The fourth one for example is limited to the secretary. The agency agrees with me. Page 11 of their brief footnote 5, they say that an employer can rebut the presumption. With some persuasion they argue that the two provisions attributed to the secretary, the way to rebut, are all of the logical possibilities. And I must say you start looking at the act in the way that things are defined and causation of this and causation of that. It gets mighty close and we were trying to figure out logically whether there is an opportunity for you to prove anything else other than those two things to rebut. And your argument is you would focus on the substantiality of causation between pneumoconiosis and the disability. Correct. Using the the sentence in usury that we cited in our case that pneumoconiosis is mild and still be able to rebut the presumption. For mild I assume you say it's not doesn't fit within the causation, partial causation. Correct. And then how do you I mean even assuming that then how do you rebut the presumption? What what evidence are you going to present? You didn't even in this case make any substantive claim of how you would go about rebutting that presumption. Yes in this case I think we did make a substantive claim that we rebutted the presumption. And as much as we relied on the opinions of doctors Zaldivar and Hippensteel who explained that this man's impairment was one that was due to an idiopathic pulmonary fibrosis. While they could exclude coal mine dust as causing this disease. That his disease did not fit in the usual parameters of co-workers pneumoconiosis. It progressed too quickly. It had a mild restrictive airways presentation. It had severe hypoxemia. It had severe diffusion impairment based on their clinical judgment and the radiographic. Wasn't that all rejected on the merits by the ALJ below? That is that is what the other parties have suggested. However the ALJ looked through the wrong lenses in looking at the evidence. Because they'll be an awfully tough standard on appeal for you to convince me of that. Well the ALJ said you have to rule out any causal connection. And when the ALJ did that that put up too high of a gate for my client doesn't have to exclude any possibility the coal mine dust might in fact be responsible. That almost seems to be inverting the presumption in favor of the operator. That doesn't make any sense. No otherwise you're giving the claimant a double presumption. The claimants already benefiting from a presumption of disability due to pneumoconiosis. Having never proven pneumoconiosis. By virtue of the years of employment. By virtue of the disability. It is presumed the claimants disabled due to pneumoconiosis. Greenwich Colliery's . . . I guess the conceptual problem that I understand Judge Diaz to be raising. Just sort of getting back on the construct we were talking about. Is if we give you the benefit of trying to prove this mild causation less substantial. Judge Diaz is asking haven't the facts that are found even if we give you the benefit of that legal structure. Haven't the facts even though they may or may not jump through that hoop in that way. You're still precluded because of the findings of fact in this case. Unless there's no substantial evidence to support it. I don't think we can give the agency fact finder that benefit of the doubt as to what they would have done with this third standard. Except they found facts that . . . They found facts that could be supported . . . With respect to the causation of pneumoconiosis. The agency fact finder said that the x-rays established the existence of pneumoconiosis. And that the medical opinions specifically that of doctors out or Dr. Rasmussen and the treating physicians were more persuasive than doctors out of our Dr. Hindensteel. Is that a causation for them? No. Because there are errors in the ALJ's weighing of the evidence. That goes to the factual argument. In other words, my point is if we were to conclude that they came out factually subject to deferential review that their factual findings can't be challenged. Then it seems to me you may gain the legal structure but the facts still may . . . It may not help you in this case. I think that's the question Judge Diaz is presenting. I may win the battle but lose the war. Well, it may not be a battle or a war. I mean, I don't know. It's a legal structure that you may be correct on but it may have no import with respect to whether he gets benefits in this case. One of the reasons we have to go back and reset the ALJ's gyroscope to look at the three different issues is because of the question of this rule-out standard. The rule-out standard is a child of the prior regulations. I have a question about that, Mr. Mattingly, which is really a lot more fundamental than the discussion so far. Your focus on usury in the statute confuses me a little bit because aren't we here on the regulation? Well, we are here on the statute. No, my question is aren't we here on the regulation? I'm glad to argue . . . Usury doesn't say anything about the regulation. As I examined the record, you didn't say anything about the validity of the regulation before the board. The regulation is invalid because what the Secretary did was just . . . But did you raise that issue before the board? I believe it was raised. I can go back . . . Can you point to me in the record? I will double-check and come back and tell you. You do agree that you needed to raise the validity of the regulation before the board for this court to examine that issue? Respectfully, no, I don't agree because it would have been useless before the board. The board's case law was . . . Are you invoking a futility exception? Has this court ever adopted a futility exception in the administrative context? I believe it has. Okay. You will address that when you come back to us on rebuttal. You would be invoking the statute and the regulation is a little broader. The regulation tries to trace the statute. Well, it's a lot broader, isn't it? Because the statute only applies to the Secretary. Right. And the regulation, the Secretary says, oh no, we think this is a good rule and it should apply to operators as well. And that's the problem. The Secretary doesn't make any provision for what usually said the operator can do and that is rebut in methods the Secretary can't. And you're going to tell us where you made that argument before the board? I will. Okay. The regulation at issue 718.204 is the key to this case, I think, because the claimant has to show pneumoconiosis is causing a material adverse effect on the pulmonary impairment or materially worsens or aggravates the pulmonary impairment. So the converse ought to be able to be shown for the employer to establish rebuttal. Now, if the employer can show that pneumoconiosis didn't have a material adverse effect or materially worsened, it logically stands to reason that you could be showing pneumoconiosis caused some impairment, but it didn't make a difference. That provision wouldn't be allowed under the two-pronged interpretation by the agency, which says you have to disprove the existence of pneumoconiosis or rule out it causing any of the disability in any particular case. So that is what the permanent regulations have defined disability to be. And when you examine that, the operator has to be able to show pneumoconiosis can be mild to establish that the presumption can be rebutted. It's a small window. How does a court of appeals handle a situation where a statute everybody seems to agree has to be read one way and the regulation doesn't follow the statute and there's no big argument raised about the regulation now being illegal? I mean, can we choose to apply the statute and ignore the regulation in that circumstance or are we bound to apply the regulation and bypass a statute which has seniority, so to speak? I think the statute trumps the regulation. It does on a challenge. The question is how do we handle it if we don't have a challenge before us when we have two, we recognize an incompatibility between the statute and regulation? I can answer. The futility doctrine helps on that standpoint that the board case law was clear that the regulation would be applied regardless of what the statute had to say so that this court can handle the de novo law question. And I think that's the real issue. Does this court have the power? Does this court have the power to handle it sua sponte? Yes. All right. Thank you. You've got some rebuttal. Mr. Kline, are you next? Yes. May it please the Court, my name is John Kline and I represent Mr. Owens. Regarding the first issue, the rebuttal standard, the claimant agrees with the secretary's position and defers any questions on that issue to the solicitor. I would like to say a few things about Mr. Owens, though. As Mr. Mattingly said, he was an underground coal miner for 29 years. He developed a severe total pulmonary disability and he is essentially a nonsmoker and had no other pulmonary risk factors other than his 29 years of exposure to coal mine dust, which included working 13 years in a 42-inch coal seam and a lot of exposure to both rock and silica dust. His claim has been in litigation for over four years and he literally went to his grave worrying about whether his benefits would be upheld. His wife still lives with that uncertainty. Regarding the merits, there are very few of these claims that are strictly textbook, but this case is reasonably close. The ALJ found that a preponderance of the X-ray evidence supported pneumoconiosis and also the CT scan evidence. The ALJ gave credit to Dr. Rasmussen's finding of disability due to pneumoconiosis and that was supported by the miner's two treating pulmonologists. Consequently, the employer failed to prove by a preponderance of evidence that Mr. Owens did not have pneumoconiosis or that his impairment was not caused by or arised out of his coal mine employment. The employer's experts maintain that Mr. Owens has an idiopathic disease of unknown cause, which in itself is an indication of uncertainty. The employer's experts acknowledge that the diagnosis requires exclusion of other known risk factors and the ALJ reasonably found that the employer's experts were entitled to less weight because they did not adequately explain why 29 years of exposure to coal mine dust was not a contributing factor and they did not fully address the findings of pneumoconiosis by the two treating pulmonologists. The ALJ provided rational reasons for giving greater weight to Dr. Rasmussen because his opinion was supported by the positive X-rays and CT scans and the severe impairment on arterial blood gas studies as well as the records of the treating pulmonologists. So as stated by the Benefits Review Board, the law judge's findings were supported by substantial evidence and determined that it was beyond the scope of review to re-weigh them, particularly in a case like this where the miner had no other risk factors except for his 29 years of exposure to coal mine dust. Thank you for considering my motion. All right, thank you. Ms. Hurley? May it please the Court, my name is Sarah Hurley and I represent the Director, Office of Workers' Compensation, United States Department of Labor. The Black Lung Benefits Act 15-year presumption provides a rebuttable presumption for a coal miner who's worked for 15 years in underground coal mine employment. If he proves that he suffers from a totally disabling respiratory impairment, he's rebuttably presumed to suffer from pneumoconiosis and also that his totally disabling respiratory impairment is due to his coal mine dust exposure. Everyone in this case agrees that the presumption can be rebutted in at least two ways. The party imposing entitlement can prove that the miner doesn't have clinical or legal pneumoconiosis and they can also disprove the connection between the miner's disability and coal dust exposure. The issue in this case is what an operator must prove to establish rebuttal under the second method, showing that the miner's impairment did not . . . was precluded if the statute is applied to them. And the third method would be to show that the pneumoconiosis was not of sufficient . . . didn't contribute sufficiently to the disability. And they would like to show that it's mild and it falls below that threshold, the statutory threshold of substantial contribution. And so logically it seems like that would be available unless we were to read the statute. I gather your view is the statute, even if it says secretary, really lists the only two logical possibilities. That's exactly right, Your Honor. And they suggest that there is a third logical possibility, which I just described and maybe you could address that. Yes, Your Honor, I understand your point. But our interpretation of the operator's argument that they're trying to disprove disability causation by proving that pneumoconiosis only . . . where coal dust exposure only contributed mildly to the impairment, that's really the second method. They're trying to disprove disability causation. The question is . . . pulmonary disease with the work, that's the causation, right? That's true. It says arising out of coal dust exposure. And so if they're unable to prove, they're willing to give you that and they're willing to say he has pneumoconiosis, but they still want to rebut the requirement that the pneumoconiosis have some contributing or a substantial contributing cause to the disability, which is the fundamental statutory requirement for benefits. And they want to be able to show that, which is not included in those two. And it seems to me logically that should . . . unless we construe secretary to include operator, but if we don't, if we take the usury align, then it seems to me that would be another way they could do it, even though I think it's a very tough way. And in this case, there's still the open question of whether the facts allow for that, if the facts are supported. Right. That's true. I agree with exactly what you're saying, but we still believe that by breaking the connection between the impairment and the coal mine dust exposure, that's the same as proving that the miner's disability didn't arise out of the coal dust exposure, because you would be disproving the link between pneumoconiosis, which is only caused by the coal dust exposure as defined in the act. I mean, the disability causation prong takes care of that. If they can disprove the link between the disability and the coal mine dust exposure, that's the second method. Except that isn't the presumption of the second. The second isn't that restricted. The second is between the work and the pulmonary disease, right? It has nothing to do with pneumoconiosis under the second. Well, but because the act now defines pneumoconiosis as legal pneumoconiosis, which is any impairment. You hit on a very difficult problem, because then you get the clinical. But in the end, that's definitionally, but in the end, you go back to, what is it, 725 or something, and the requirements for showing that you have to show that pneumoconiosis itself, however defined, was a substantially contributing cause of the disability. Right, but this circuit and the department's regulations require an operator in this situation to rule it out, and that has been this court's precedent and the department's regulations for its longstanding. And it makes sense in this type of situation, because we have a minor. The whole idea behind the 15-year presumption was to assist a minor that had 15 years, you know, a high-risk minor, to ease his path for eligibility. And in this case, a minor who invokes a presumption, he's already established his long-term dust exposure, that he has a totally disabling respiratory impairment, and he also really has established that he has pneumoconiosis. He gets a presumption of pneumoconiosis, and he gets a presumption that his disability came out of his work, coal mine work. Right. And so, but... Well, I mean, if he didn't have pneumoconiosis, the operator could disprove pneumoconiosis. That's another method. Well, that's another way, but they're not trying to do that. They're going to say, I guess they're arguing that he has enough evidence for pneumoconiosis. They just don't think it rose to the sufficient level of causation for the disability. Right. But does the statute require a sufficient level of causation, or just that the pneumoconiosis be part of the disabling condition? The statute doesn't address the... Well, I thought it said substantial. You have to get to a substantial level. What does that mean? Well, it means more than a de minimis. It means more than a de minimis cause. It has to have some tangible effect on the minor's disability. And we have that on this record, right? No, we don't have that on this record. We have a credibility determination made by the ALJ that the doctor's opinions, who were sufficient, really, to rule out, just were plain not credible on any standard at all in this case. And, in fact, this case doesn't even... The ALJ didn't even apply the rule-out standard in this case. Well, I think you misunderstood my question. We have a sufficient finding of disability. Oh, yes. Oh, definitely, yes. All parties agree that the man was totally disabled due to pneumoconiosis. Well, to refine that question for my purposes a little bit, you would argue there is substantial... I mean, there's evidence to support a substantial contribution of pneumoconiosis. One of the doctors concluded that causation. Definitely, Dr. Rasmussen. Rasmussen, yeah. Yes. Yes, we would. Let me ask you about this problem that Judge Davis raised. The regulation does seem to be out of sync with the statute, as is now interpreted by usury. How should an appellate court handle that when we see the statute and let's assume we want to construe or we're bound to construe the statute the way usury, secretary, means secretary. What do we do with the regulation that tends to trample that? You would look to see if our regulation... Well, first you'd look to see if the statute definitely spoke to the issue, and it does. But you would also look to the agency's definition to see if it's a permissible interpretation of the statute. What if we conclude it's not, we read it? Then I think that you would have to probably invalidate the regulation, I guess, if it's not permissible. Do you concede that the issue was preserved before the board? No, we don't concede that, no. Do you believe the issue needed to be raised before the board in order for us to consider it, other than sui sponte? Yes. Yes, Your Honor, we would. We would like a chance to address it, definitely, and we didn't have that chance. To return to my question, what if we're writing the opinion and we all of a sudden observe a regulation that we conclude is not justified by the statute? Do we apply the statute or do we apply the reg? Well, you would have to apply the statute because the statute trumps the regulation, definitely agree. But we believe that our... Oh, I know you do. I'm going on hypotheticals and trying to figure out because there does seem to me, and I concede this part, that there is some tension between the reg and the statute as read under usury. There is some tension, but we believe that really at issue in this case is what an operator has to prove under that second method, and so there really isn't that much of a tension. Is the point beside the point because what usury said about the statute as a matter of law applies to the regulation? The Supreme Court's opinion on what the statute says does bind us, right, in writing our regulation. We do concede that. So I take it from that concession that the operator didn't really have to raise the issue of the regulation if, in fact, the argument is the Supreme Court has already left this little window that we can climb through. If the window exists... I think what you just said is that if the window exists in the statute, it exists necessarily in the regulation. That is true. The Supreme Court did leave us a window in usury in their footnote. They did leave open the possibility that an agency could promulgate substantive regs, perhaps where the statute is not clear. I think perhaps you misunderstood me. What I mean, the window is the window the operator wants to climb through in this case. He doesn't have to climb through the window in the statute because usury says the statute doesn't apply to the operator. But he's drawing from usury, if I understand the argument, the basis for a window in the regulation. I thought you just agreed with that. I might want to refine that a bit. Okay. You've got a little time to do that. Actually, the statute actually doesn't define what an operator must prove to rebut the presumption. The statute does say what the secretary must prove, but it doesn't say what the operator must prove. I think, as we discussed in our brief, what the operator must prove is exactly what the secretary has to prove in this case. And that's basically our case. Okay. Mr. Mattingly? The operator can prove something less than the secretary. That's what the Supreme Court told us in usury. That's what we have to apply. Judge Davis, reply brief, pages 21 and 22. We cited futility cases. Some of them are even black-lung cases. From the Sixth Circuit? No, from the Fourth Circuit. So, Kearns v. Consolidation Coal Company. The question, what do you think about the suggestion Judge Davis makes that if we're going to read usury to construe the statute, shouldn't we also read usury to construe the reg under the statute? And I've got an easy way out of that. The regulation as written doesn't apply to this case because subsection E of that regulation says it only applies to claims filed before January 1, 1982. The agency still hasn't changed it. So while the agency may have to remodel that regulation for judges to apply it, at this point everyone's just applying the statute. So I don't think we have to be concerned with what 718.305 says at all because it, by definition, does not apply to this case because it was filed after January 1, 1982. And that's why we focused on the challenge to the statute as opposed to challenging the regulation. The only case cited on page 22 of your reply brief is Kearns from 1999 for the proposition that you apply the law as it exists now. The futility cases are on page 21, and they're Sixth Circuit cases. Okay, I may have misread that. I apologize. The rule-out standard is just too tough with the window that was left open by the usury decision, by the fact that the statute does not limit operators. So this case really needs to go back for the ALJ to apply that standard. The ALJ may get to the same result, but we don't know that until the agency fact finder has a chance to grapple with the evidence under that standard. Thank you. All right, thank you, Mr. Manningly. We'll come down and greet counsel and then proceed on to our second case.
judges: Paul V. Niemeyer, Andre M. Davis, Albert Diaz